## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Special Agent Kyle D. Zavorotny, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint and application for an arrest warrant for Stela Sacara, also known as Stela Thomas, further described below, for the offense of False Statement to Federal Agents, in violation of 18 U.S.C. § 1001.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since June 16, 2002. I am currently assigned to the Bedford, New Hampshire Resident Agency of the Boston Division of the FBI. I investigate espionage-related criminal violations, including espionage, economic espionage, violations of export-control regulations, and other offenses, including violations of Title 18 criminal statutes, to include 18 U.S.C. § 1001. I have received FBI training concerning these offenses and the investigation thereof.

3. I am responsible for enforcing federal criminal statutes and am authorized to execute arrest and search warrants under the authority of the United States. During my tenure as a Special Agent, I have written and assisted in the writing of search warrant affidavits, and I have participated in the execution of numerous federal and state search warrants and arrests.

4. The facts in this affidavit come from my personal observations, my training and experience, documents obtained through various legal processes, and information obtained from other agents and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested warrants, but does not set forth all of my knowledge about this matter. Statements attributed to individuals are paraphrased unless otherwise noted.

## PROBABLE CAUSE

5. Stela Cornelievna Sacara (sometimes spelled Secara; referred to herein as Stela), also known as Stela Thomas, was born in 1986 in Moldova and is a citizen of that country. Stela currently

resides at                                                              Stela has attempted to gain United States citizenship; however, her attempts have been denied and she is currently the subject of deportation proceedings.

6. Stela operates multiple companies from her home and the office located at 530 Chestnut Street, Suite 1A, Manchester, New Hampshire. The companies include Rochester Chemical LLC (which name appears on a sign outside the office door), Newedge Technology LLC (also known as New Edge Technology LLC or New Edge Research LLC), Cryotec LLC, Pharmakom LLC and Sublime Beauty LLC.

7. The FBI and the United States Department of Commerce's Office of Export Enforcement (OEE) began conducting a joint criminal investigation regarding the activities of Stela, Rochester Chemical LLC, Newedge Technology LLC, and others associated with them on or about April 18, 2018. This investigation sought to determine, among other things, exports made by these entities, the end user(s) and end use(s) of the items being exported, and whether the exports were made in compliance with United States laws and regulations.

8. On September 14, 2018, OEE Special Agent Courtney Rauch and I interviewed Stela in her office at 530 Chestnut Street. At the initiation of the interview, SA Rauch displayed his credentials and identified himself as a federal agent. I was introduced as a co-worker of SA Rauch. Stela was advised that the agents were there to discuss the company's compliance with U.S. export laws and regulations.

9. The office was primarily a single room containing two desks and a sofa and was full of boxes, both sealed and opened, and some broken-down boxes. There was a storage area off the office containing boxes.

10. There was no evidence seen in the office of the operation of any laboratory, research facility, testing facility, or any business activity other than the receipt, re-packaging and shipment of

items.

11. Stela stated that she does accounting for Rochester Chemical, which she claimed was based in Delaware. She stated the company's manager was named Amy Johnson, and that she believed Johnson resided in Delaware. She stated she did not have contact information for Johnson on hand at the time, but agreed to locate the contact information and e-mail it to SA Rauch. She stated that other than Johnson and herself, the company would sometimes hire subject-matter experts to handle questions for customers; however, she identified no other company employees. At the time of the interview, Stela's boyfriend, Sergiu Companeet, was present at the office and stated he worked there "for food," just assisting Stela by moving boxes.

12. Stela stated that Rochester Chemical acquires consumable laboratory equipment such as bottles, vials, glassware, etc. for use in laboratories from various manufacturers, repackages them and ships them to purchasers. She stated that the only company to which Rochester Chemical exports goods is a German company called Riol-Chemie. She stated that Rochester Chemical ships items to Riol-Chemie "a couple of times a month." She did not claim that Rochester Chemical operates a laboratory, research facility or other testing facility.

13. SA Rauch asked Stela about her knowledge of U.S. export-control laws, and her responses showed she was familiar with concepts such as embargoed countries, Export Control Classification Numbers (ECCNs), and the meaning of items being classified "EAR99." SA Rauch provided Stela with several U.S. Department of Commerce handouts on export controls.

14. In the course of the investigation, agents obtained a national security letter for records of a Bank of America account belonging to Rochester Chemical LLC. According to these records, on April 20, 2015, a business banking account was opened at Bank of America's branch located at 620 Elm Street, Manchester, New Hampshire in the name of Rochester Chemical LLC. The documents to open the account were completed by Stela utilizing the name Stela Thomas. In these documents, Stela

3

stated that Rochester Chemical is a limited liability company organized in Delaware and is classified for tax purposes as a single member sole proprietor LLC. The documents stated that Stela's title was "Managing Member."

15. On January 14, 2019, SA Rauch and I traveled to Stela's residence at

Stela permitted us into the residence. I advised Stela that I am an agent of the FBI and showed her my credentials; Stela also acknowledged that she remembered us from our previous interview. She was asked about the contact information for Johnson she had previously stated she would provide, and she replied that she only had an e-mail address. I asked Stela whether Johnson truly exists, and showed her a copy of the Bank of America document in which she stated that she (Stela) was the sole member of the limited liability company. Stela stated she wished to speak with an attorney and declined to speak with us further. Stela was provided with my business card.

16. That evening at approximately 6:17 p.m., I received an e-mail sent to my FBI e-mail account from **accounting@rochesterchemical.com**, in which Stela stated that she had requested information about the company from "her superiors" and would provide the information when she received it.

17. The following day, January 15, 2019, at approximately 2:48 p.m., I received a second e-mail from Stela using **accounting@rochesterchemical.com** which forwarded an e-mail from **radubolocan1971@gmail.com**. The sender of the forwarded e-mail identified himself/herself as Radu Bolocan, and stated that he/she was the "current owner and director of the company" and a citizen of Romania. He/she stated that "Amy Johnson" was "Lanjewar Dulichand" located in India, and that he/she decided to use the name "Amy Johnson" since the true name was too hard to pronounce. He/she stated that Rochester Chemical exported its products to Germany, and he/she had requested "our German partner" to sign an end user certificate. Bolocan claimed that he/she does not speak English; however, the English in the e-mail was nearly perfect.

18. On January 16, 2019 at approximately 12:05 p.m., I received a third e-mail from Stela at **accounting@rochesterchemical.com**, forwarding another e-mail from **radubolocan1971@gmail.com**. In this e-mail, Bolocan stated that he/she provided "export compliance documents" for shipments made since October 2018, but needed more time to provide information prior to that date. He/she also stated he/she does not "communicate directly with the end user, only through our German buyer…"

19. Based on the above and other information, this court issued three search warrants in May 2019 for e-mail and online account information. These warrants were directed to Oath Holdings Inc. for records pertaining to Stela's personal e-mail account, **stelase_cara@yahoo.com**; to Google, Inc. for records pertaining to the purported account of Radu Bolocan, **radubolocan1971@gmail.com**; and to GoDaddy, Inc. for records pertaining to the domains rochesterchemical.com and new-edge-research.com.

20. The response received from Google showed that the **radubolocan1971@gmail.com** account was created on January 15, 2019, the day following the visit of SA Rauch and me to Stela's home and the day the first e-mail from that account was forwarded to me from Stela. The records show that the first login to the account, at the time the account was created, came from Internet Protocol (IP) address 75.69.157.4. A search of publicly available records at ultratools.com for that IP address indicates it belongs to Comcast Cable Communications Holdings, Inc., and the "Name" for the block of IP addresses it belongs to is "Boston-11."

21. The Google response also shows that exactly two e-mails were sent from the account, both to **accounting@rochesterchemical.com**, both of which were forwarded to me as described above. No e-mails were sent to the account other than a "Welcome to Your New Google Account" message sent from Google upon the account creation.

22. The Google response also provided the "Contacts" created for the account; the only

5

contact created for the account was **accounting@rochesterchemical.com**.

23. The response from GoDaddy for records of the domains rochesterchemical.com and new-edge-research.com includes tens of thousands of e-mails sent to and received by e-mail addresses created in those domains, predominantly **accounting@rochesterchemical.com** and **accounting@new-edge-research.com**. The records show that on January 15, 2019, the day the **radubolocan1971@gmail.com** account was created and sent its first e-mail, "Amy Johnson," utilizing **accounting@rochesterchemical.com**, sent at least two e-mails to chemical companies. These e-mails also originated from IP address 75.69.157.4, the same IP address used to create the **radubolocan1971@gmail.com** account.

24. On January 16, 2019, the day the second e-mail was sent by **radubolocan1971@gmail.com**, "Amy Johnson," utilizing **accounting@rochesterchemical.com** sent at least five e-mails to chemical companies. The first two e-mails originated from IP address 75.69.157.4. The other three e-mails originated from IP address 64.222.235.2. A check of publicly available records at ultratools.com found that this address belongs to Fairpoint Communications, 770 Elm Street, Manchester, New Hampshire.

25. The GoDaddy search warrant return also includes all three e-mails sent to me from accounting@rochesterchemical.com described above. All three of these e-mails originated from IP address 64.222.235.2.

26. The GoDaddy response shows many e-mails over several years sent to and from an accountant for the companies discussing tax issues. These e-mails indicate that the principals of the company are Stela and her sister, Natalia Sacara, also known as Natalia Bolocan.

27. A check of U.S. Government records of travelers entering the United States shows that both Natalia and her and Stela's mother were in the country at the time the **radubolocan1971@gmail.com** account was created and utilized.

28.     E-mails produced by GoDaddy show that about October 2018, Rochester Chemical posted on a website seeking an employee to communicate with suppliers. The company ultimately hired an individual named Pratik Lanjewar. No e-mails were found making any mention of "Dulichand." It appears that the name provided by the **radubolocan1971@gmail.com** account for "Amy Johnson," "Lanjewar Dulichand," was a combination of the name of a true employee and an unknown or unrelated individual.

29.     Based on the above, there is probable cause to believe that the **radubolocan1971@gmail.com** e-mail address and the two e-mails sent by the account were created by Stela and/or Natalia in efforts to deceive us and further impede our investigation.

30.     Several e-mails also show that Amy Johnson is an alias used by Stela and/or Natalia. For example, in an e-mail from **accounting@rochesterchemical.com** to an accountant dated July 8, 2019, the sender states that a document generated by the accountant "says                         I live in a house, there are no apartment here", and it bears a signature line from Amy Johnson. As stated above, Stela resides at                                                          , and she and Natalia were corresponding with the accountant as the principals of the company.

31.     A review of the thousands of e-mails produced in the search warrant returns described above found no communications between "Amy Johnson" and Stela which would be expected in a relationship such as a superior with an employee. No communications from Radu Bolocan were found other than the two gmail.com e-mails described above which were then forwarded to me, which is not consistent with his/her claim the he/she was "the current owner and director of the company" made in the e-mails. Bolocan further claimed in the same e-mail in which he/she claimed to be the "owner and director of the company" that "Amy Johnson" is an alias for "Lanjewar Dulichand" who places orders and "checks Stela's work." However, no communications from a "Lanjewar Dulichand" to Stela were found in the search warrant return. Stela claimed to have only an e-mail address (which she did not

7

provide) for this person who "checks her work," and it is unclear how someone located in Delaware, as Stela claimed Amy Johnson is, could check her work. As stated above, the search warrant returns show that Rochester Chemical did hire an individual named Pratik Lanjewar; however, the warrant returns show that the name "Amy Johnson" was being used long before Lanjewar was employed, and the communications involving Lanjewar produced in the warrant return clearly show that Lanjewar works in a subordinate role.

32. Based on my training and experience, I know that entities in foreign countries will sometimes disguise the true end users of products acquired from the United States to prevent or impede the ability of the United States Government to determine the activities of these end users. In many instances, the end users being disguised are or are affiliated with the military or other agencies of the governments of the countries in which these end users are located. Stela's false statements regarding the identity of the company management and distancing herself from her role furthers this goal by minimizing her own knowledge of the end users and causing investigators to waste efforts attempting to locate individuals who do not exist.

33. Based on the above, there is probable cause to believe that Stela's statement to SA Rauch and me that the manager of Rochester Chemical is Amy Johnson was made with the knowledge that SA Rauch and I are federal agents, with knowledge that the statement was false, and with the intention to deceive us and impede our investigation. Furthermore, Stela had multiple opportunities to provide truthful information, yet she failed to do so and made or assisted in the making of additional false statements regarding the identity of the manager of the company.

34. Stela's statement to SA Rauch and me that the manager of Rochester Chemical is Amy Johnson was material to the investigation as the identification of the individuals primarily responsible for the operation of businesses engaged in the repackaging and shipping of products is critical to determining the products being shipped and the end user(s) and end use(s) of these products. The

manager(s) of such companies would be best positioned to have the information sought, and to answer investigators' questions. This information is necessary to determine whether the exports are being made in compliance with United States laws and regulations.

35. Based on the above, there is probable cause to believe that on September 14, 2018, in the District of New Hampshire, Stela Sacara, also known as Stela Thomas, committed the offense of False Statement to Federal Agents, in violation of 18 U.S.C. § 1001.

Respectfully submitted

/s/ Kyle Zavorotny
Kyle Zavorotny
Special Agent
Federal Bureau of Investigation

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: November 17, 2020
Time: 4:08 PM, Nov 17, 2020

/s/ Andrea K. Johnstone
United States Magistrate Judge